**STATE OF VERMONT**
**SUPERIOR COURT — ENVIRONMENTAL DIVISION**



| | |
|---|---|
| In re: Wood NOV & Permit Applications | Docket No. 138-8-10 Vtec<br>(Appeal from Town of Hartford<br>Zoning Bd. of Adjustment decisions) |

+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++

| | |
|---|---|
| Town of Hartford v. Marc & Susan Wood | Docket No. 1-1-11 Vtec<br>(Municipal enforcement proceeding) |

## Revised Decision on Post-Judgment Motions[1]

These two matters were coordinated for trial, which was completed in 2011 and was the subject of a Corrected Merits Decision,[2] issued on March 27, 2012. This Court denied the applications that were the subject of Docket No. 138-8-10 Vtec and granted injunctive and monetary penalties to the Town of Hartford ("Town") in Docket No. 1-1-11 Vtec.

Marc Wood ("Mr. Wood") filed a timely appeal of all factual and legal determinations. The Vermont Supreme Court issued its affirmation as to all determinations, which resulted in the conclusion of these legal proceedings, for the time being. See In re Wood NOV and Permit Amend. Applications, 2013 VT 40, 194 Vt. 190.

Mr. Wood's dispute concerning the development of his properties along Vermont Route 14 in the Town of Hartford pre-dates even these dockets, which are more than six years old. The Supreme Court quoted this Court's summary of the history of the parties' various disputes:

> [The parties] have engaged in multiple litigations, in multiple courts, over multiple years, all with common themes: whether various plans for development of two adjoining parcels of land along Vermont Route 14 should be approved, whether the development that has occurred is in accordance with either a prior zoning permit or the applicable zoning regulations, and whether Marc Wood's

---

[1] This Decision on Post-Judgment Motions was originally issued on March 1, 2017. On March 13, 2017, The Town of Hartford filed its Motion to Alter or Amend that Decision to correct a typographical error in ¶ 19(i), to add the deadline of "November 15, 2017" to ¶ A of the Order on page 8, and clarifying the revision to Note 4 (see ¶19(c) on page 6) by removing the phrase ""as part of this project." By the issuance of this Revised Decision, we have **GRANTED** the Town's motion.

[2] The Corrected Merits Decision was issued to remedy certain typographical errors as to dates on pages 11 and 15 and the per-day fine recited on page 19 of the original Merits Decision, which was issued on February 22, 2012.

development of those parcels should be regarded as violating those zoning regulations.

In re Wood, 2013 VT 40, ¶ 2.

By the Supreme Court's estimate, these dockets, as of 2013, represented at least the tenth time that Mr. Wood had asked that a permit application, amendment application, or reconsideration be given to his plans to develop the Route 14 properties. Wood, 2013 VT 40, ¶¶ 4–21.

The facts relevant to those previous applications and reconsideration requests are summarized in this Court's Corrected Merits Decision and the Supreme Court's Decision. See In re Wood NOV and Permit Amend. Applications, 138-8-10 Vtec and 1-1-11 Vtec (Vt. Super. Ct. Envtl. Div. Mar. 27, 2012) (Durkin, J.), *aff'd* 2013 VT 40, 194 Vt. 190.

This Court was next called upon to revisit these closed Dockets in 2014 when Mr. Wood and the Town each filed post-judgment motions. By two entry orders, issued on the same day, this Court denied Mr. Wood's motion for post-judgment relief and granted the Town's motion to hold Mr. Wood in contempt for failing to pay all fines due, including interest, and to complete performance of all injunctive relief. In re Wood NOV and Permit Apps., 138-8-10 Vtec and 1-1-11 Vtec (Vt. Super. Ct. Envtl. Div. Aug. 12, 2014) (Durkin, J.). This Court established a new deadline for Mr. Wood to satisfy the injunctive directives (the new deadline being September 12, 2014)[3] and deferred its determination of whether to award the Town further reimbursements, including attorney's fees, incurred as a consequence of Mr. Wood's contempt. Id.[4]

---

[3] As to the injunctive actions, the Court directed that Mr. Wood:

no later than Friday, September 12, 2014:

    1.    Pay to the Town of Hartford the sum of $10,664.76;
    2.    Provide a full copy of this Court's March 27, 2012 Corrected Merits Decision and Judgment Order to [Mr. Wood's] engineers, Souhegan Valley Engineers, Inc., as well as a copy of this Entry Order;
    3.    Authorize the[] engineers to speak with any officials designated by the Town, so that the Town may confirm that Defendants' directives conform with this Court's Orders;
    4.    Fulfill the remaining injunctive provisions of this Court's March 27, 2012 Corrected Judgment Order, using September 12, 2014 as the final deadline to calculate all remaining deadlines.

In re Wood NOV and Permit Apps., 138-8-10 Vtec and 1-1-11 Vtec (Vt. Super. Ct. Envtl. Div. Aug. 12, 2014) (Durkin, J.) (emphasis in original).

[4] While the Court's contempt order initially named both Mr. and Mrs. Wood, the Court subsequently granted Mrs. Wood's motion to clarify its contempt order by noting that the Court directives only required Mrs. Wood to fulfill her obligations under the Corrected Judgment Order of March 27, 2012. Mrs. Wood has not been an active participant in the zoning violations caused by her husband and has been a participant in these legal proceedings mainly because she is a joint owner of one of the subject parcels. See In re Wood NOV and Permit Apps., 138-8-10 Vtec and 1-1-11 Vtec (Vt. Super. Ct. Envtl. Div. March 6, 2015) (Durkin, J.).

The Town thereafter moved for enforcement of the contempt order and Mr. Wood moved for further clarification of the Corrected Merits Decision and Judgment Order. After "[m]any conferences and other procedural back and forths on how best to enforce the Court's final judgment . . . [and a]fter several scheduling delays, the Court scheduled a hearing on all . . . motions for April 25, 2016." In re Wood NOV and Permit Apps., 138-8-10 Vtec and 1-1-11 Vtec (Vt. Super. Ct. Envtl. Div. April 13, 2016) (Durkin, J.). When Mr. Wood's attorney requested leave to withdraw her representation, and based upon the credible grounds presented, the Court granted that withdrawal request and a further continuance of the motions hearing. Id. The hearing on these latest post-judgment motions was rescheduled to August 30, 2016.

The Court received further evidence and legal arguments and completed the hearing that day. The parties requested leave to file post-hearing memoranda, which the Court allowed; those filings were completed on November 3, 2016.

Based upon the credible evidence presented at trial, the Court renders the following Findings of Fact, Conclusions of Law, and Order on the pending post-judgment motions:

## Findings of Fact

### I. Motion to Clarify

1. Mr. Wood professes to want to abide by the directives of this Court's final Corrected Merits Decision and Judgment Order of March 27, 2012. However, he does not dispute that an unpermitted retaining wall remains on his properties, nearly five years later.

2. These cases, and their predecessors, have presented several challenging legal issues, all of which have been addressed on multiple occasions by this Court and the Vermont Supreme Court. The fact that Mr. Wood has allowed the unpermitted structures to remain on his properties for multiple years, after multiple court orders, would normally cause a reviewing court to doubt Mr. Wood's credibility. We have concluded, however, that a more troubling consequence is at work: because of his persistence to develop his property, even when his permit applications have either been denied or deemed incomplete, and his conviction that officials at the Town of Hartford have acted to thwart his development efforts without just cause, this Court has concluded that Mr. Wood does not have the ability to clearly review and accept this Court's directives, even when affirmed by the Vermont Supreme Court.

3. While the Town has exhibited some aversion towards Mr. Wood, we have concluded that the Town's aversion is justified, due to Mr. Wood's numerous efforts to thwart the Town's actions

to bring his properties into compliance with the applicable zoning regulations. The Town's various enforcement efforts have not thus far persuaded Mr. Wood to bring his properties into compliance.

4. Mr. Wood, both directly and through his attorney, stated at the hearing that his current motion to clarify was "solely" focused upon his efforts to save that portion of the "Diner" building that was not destroyed by fire and was not improved in violation of the zoning regulations. We address those claims below. However, while not specifically stated, Mr. Wood appeared at various times to also argue for a "clarification" of whether he was obligated to remove all of the cement slabs used in his construction of the retaining wall.

5. In an effort to clarify that latter point, the parties authorized their respective engineers to negotiate directly on the proper steps to safely dismantle the unpermitted retaining wall and to stabilize the soils behind it. While the engineers differ in some final terms, they are substantially in agreement on the steps necessary to safely remove the wall and return the site to a safe condition.

6. As of the date of the motion hearing, Mr. Wood had not begun any efforts to remove the unpermitted retaining wall that he was first directed to remove many years ago.

7. The Diner building was substantially (i.e. more than fifty percent) destroyed by fire nearly ten years ago. The building has no roof and is missing at least one full exterior wall.

8. Mr. Wood was unable during the hearing to provide a credible summary of the work he wishes to complete to secure the Diner, absent work that would be more rehabilitative in nature and for which he would need, but has yet to receive, a zoning permit.

9. The credible evidence received has convinced the Court that the property can only be made safe by the complete removal of what remains of the Diner building.

## II. Town's Motion

10. Both Mr. Wood and the Town have made considerable effort and expended considerable sums employing their respective engineers and lawyers.

11. The Town provided a thorough itemization of the legal fees and expenses it has incurred that are directly related to Mr. Wood's failure to satisfy the injunctive and penalty directives in this Court's Corrected Merits Decision and Judgment Order of March 27, 2012, as affirmed by the Vermont Supreme Court. The Town's itemization covers fees and expenses incurred from January 23, 2014 through July 31, 2016. This itemization was supplied to the Court and Mr. and

4

Mrs. Wood in a filing received on September 12, 2016, which the Court directed at the end of the August 30, 2016 motion hearing.

12.     This itemization <u>does not</u> include the fees and expenses incurred in connection with the final preparation and participation in the August 30, 2016, hearing.

13.     The itemization is attached to copies of the individual bills sent to the Town by its attorneys. Those copies of the bills include redactions for fees and expenses incurred by the Town that were not deemed directly related to Mr. Wood's failure to satisfy the March 27, 2012 Corrected Judgment Order.

14.     The itemized fees directly incurred for Mr. Wood's failure to satisfy the Corrected Judgement Order total $19,524.00; the itemized expenses total $563.90.

15.     Mr. Wood employed Randall H. Bragdon, PE, of Souhegan Valley Engineering, LLC to prepare detailed plans and notes for the safe removal and slope stabilization on the Wood properties. The Town employed its own engineer to review Engineer Bragdon's plan and to assist in offering revisions to those plans.

16.     During the course of the August 30, 2016 hearing, Engineer Bragdon advised that, based upon discussions with the Town's engineer, he recommended that several of the notes contained in his plans should be revised. The Town largely agrees with his suggested revisions, subject to the Town agents being able to review and offer comments upon the revised plans. The Court therefore directed Engineer Bragdon to prepare his suggested revisions and submit them to the Court.

17.     Engineer Bragdon submitted his revised plans to the Court on September 15, 2016. The Town offered comments on October 3, 2016, to which Mr. Wood offered a reply on October 11, 2016. The Town offered a final reply on November 3, 2016.

18.     The parties are largely in agreement on the plans for a safe removal and slope stabilization. In fact, the Town had not sought any revisions to the plans themselves, but only to the explanatory notes contained in the plans.

19.     Based upon the parties' respective responses, the Court directs that Mr. Wood have Engineer Bragdon make the following final revisions to his explanatory notes on his wall removal and slope stabilization plans:

    a. <u>Note 1</u>: This Note shall remain as revised by Engineer Bragdon, with the addition of a clarifying note that the Town shall have the right to seek the Court's intervention in the event that the Town expresses concerns about any material

deviations from the removal plans proposed by the contractor doing the work, who is likely to be Mr. Wood.

b. <u>Note 2</u>: This Note shall remain as revised by Engineer Bragdon, with the addition of a clarifying note that the Town shall have the right to prior approval of any substitute engineer conducting the daily inspections and submitting the weekly progress reports, if Mr. Bragdon is not the engineer doing such work.

c. <u>Note 4</u>: This Note must be revised as follows. First, if a temporary safety barrier is to be created using concrete slabs. It shall be no taller than four feet in height, so as to minimize sight observations for traffic safety. Further, the Note shall direct that this temporary concrete slab barrier shall be removed upon the completion of the slope stabilization. In the alternative, a construction-duty grade four-foot tall wire fence may be used instead of the concrete slabs. Lastly, the Note should direct that the Diner building must be removed. The Grange building may remain on site, in its current condition, so long as it is boarded up to prevent vandalism and access to the interior of the building. Mr. Wood may repair the Grange building roof, but may not conduct any other improvements to the building unless and until he receives zoning approval.

d. <u>Note 5</u>: Per Mr. Bragdon's suggestion, Note 5 should be expanded to reflect that the access drive and the Diner building are reflected on the plans solely for reference purposes and that some site work will require use of the access drive. However, these illustrations on the plan do not reflect any permitted development on the properties.

e. <u>Note 6</u>: Work on the site shall commence immediately after April 15, 2017, and may continue until completed, provided that the work shall be completed no later than November 15, 2017. Mr. Bragdon shall provide notice to Town officials when the site work begins. All other provisions of Note 6 as proposed by Mr. Bragdon shall remain.

f. <u>Note 8</u>: Mr. Wood's attorney has supplied copies of correspondence and determinations from the Agency of Natural Resources, Department of Environmental Conservation ("DEC") that the use of concrete slabs does not constitute solid waste. These DEC determinations are dated at various times during the year 2000 and appear be based upon prior plans; one DEC correspondence notes that the "approval expires upon project [sic] **September 20, 2000."** (emphasis in original). This Note 8 must be revised to reflect that work cannot begin until DEC has received Mr. Bragdon's revised plans and has reissued its authorization. The only concrete slabs that may remain in place shall be no less than three feet below the finished grade, after slope stabilization work is completed. If excavation and slab removal reveals voids between the slabs remaining on site, the contractor shall compact soil into the voids and the engineer shall certify that the remaining slabs are stable.

g. <u>Note 9A</u>: This Note shall remain as currently worded. The Court is relying upon Mr. Bragdon's representation in this Note that "concrete slabs [will be removed] in a manner which allows site safety to remain paramount throughout the process."

6

h. <u>Note 9B</u>: This Note shall remain as currently worded.

i. <u>Note 9C</u>: The first paragraph in Note 9C must include the additional requirement to have a Vermont-Licensed engineer, approved by the Town if other than Mr. Bragdon, to conduct daily inspections of the work, if the work is to be completed by Mr. Wood.

j. <u>Notes 10 and 11</u>: These Notes shall remain as currently worded, as shall all other Notes that have not been specifically referenced in this section.

20. Mr. Bragdon is directed to revise the plans and notes as detailed above, to file a copy of the same with the Court, and to provide the Town with three (3) copies for use by its attorney, engineer, and other Town official.

## Conclusions of Law

We are uncertain as to how Mr. Wood wishes this Court to address his motion for clarification, and are uncertain as to our procedural authority to do so. As outlined in the first pages of this Decision, the Corrected Merits Decision and Judgment Order that is the focus of Mr. Wood's motion was issued nearly five years ago and was affirmed by the Vermont Supreme Court over three and a half years ago. The applicable time limitations for amendments or reconsiderations of judgment under V.R.C.P. 59 and 60 have long since passed.

We were grateful to learn that Mr. Wood has taken the steps to satisfy the penalty provisions of this Court's judgment. However, we remain very troubled that the offending wall remains on site and that little actual site work has begun to remove the offending structures, even up through the date of our August 30, 2016 hearing on the pending motions.

In light of the procedural history of this litigation, and the litigation that preceded it, and the credible evidence presented at the post-judgment motions hearing, we conclude that Mr. Wood is incapable of differentiating between those portions of the Diner parcel that remain undamaged by fire and that may be rehabilitated without first obtaining a zoning permit. We therefore **CLARIFY** our Corrected Merits Decision and Judgment Order by directing that Mr. Wood cause the entirety of the remnants of the Diner building to be removed from his properties.

The parties and their engineers have worked to offer helpful clarifications to the wall removal and slope stabilization plans proposed by Engineer Bragdon. We conclude that the plans and notes, as directed above, will most likely (if timely followed) result in the safe removal of the offending structures on the Wood properties and allow the properties to be returned to conformity with the zoning regulations.

Lastly, we take up the Town's claim that the Court should hold Mr. Wood in contempt and direct that he be ordered to cure such contempt and reimburse the Town for the additional attorneys' fees that were necessitated by Mr. Wood's contempt. By Mr. Wood's own admission, he has failed to satisfy the injunctive directives of this Court's prior orders. While there has been some legitimate basis for confusion over some details for the wall removal and slope stabilization, the uncontested testimony was that Mr. Wood has failed, some five years after judgment, to even begin the process to set up and begin the dismantling of the unpermitted structures. In fact, and incredibly, it appears that up until just prior to the August 30, 2016 hearing, Mr. Wood was still attempting to convince his engineer and the Town officials to allow his unpermitted wall to remain on the property. All these actions evidence a contempt of the Court's order of nearly five years ago.

The Town has incurred over $20,000.00 in additional legal fees and expenses in its efforts to convince Mr. Wood to voluntarily satisfy the Court's judgment. The fees and expenses claimed by the Town are reasonable in this Court's judgment, particularly in light of Mr. Wood's contemptuous responses and the efforts the Town was required to expend. We therefore will direct that Mr. Wood reimburse the Town $20,000.00 for the fees and expenses he has caused the Town to incur, provided however that Mr. Wood shall be entitled to a $6,000.00 credit, that the Court has fashioned as an incentive to complete the needed work on a timely basis.

With this incentive, and the other directives in this Decision and Order, we hope to assist the parties in bringing their legal disputes concerning these properties to a final conclusion.

### Order

Accordingly, based on the foregoing, the following is hereby **ORDERED** and **ADJUDGED**:

A. Marc Wood shall cause the complete removal from his Route 14 properties of all remnants of the Diner building, **by no later than November 15, 2017**.

B. Marc Wood shall immediately pay over to the Town of Hartford the sum of **$14,000.00** as reimbursement for the reasonable fees and expenses incurred by the Town of Hartford and a direct consequence of Mr. Wood's contempt of this Court's Corrected Merits Decision and Judgment Order of March 21, 2012, as affirmed by the Vermont Supreme Court. This sum shall represent all reimbursement due by Marc Wood to the Town of Hartford, **provided** that Mr. Wood shall cause all work necessary to comply with the revised plans for wall removal and slope stabilization **no later than November 15, 2017**. In the event that Mr. Wood shall fail and refuse to complete such work by that deadline, then Mr. Wood shall then immediately pay the Town of Hartford an additional sum of

**$6,000.00**, which sum (when added to the previously ordered sum of $14,000.00) shall constitute full reimbursement of the Town's legal fees and expenses incurred as a result of Mr. Wood's contemptuous actions.

C. Mr. Wood and his engineer are directed to cause their plans for the wall removal and slope stabilization to be revised to conform with the provisions of this Decision, above. They shall cause the revised plans to be filed with the Court, with three copies provided to the Town's attorney, no later than **Friday, April 7, 2017**.

This completes these post-judgment current proceedings before this Court.

Electronically signed on April 3, 2017 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____

Thomas S. Durkin, Judge
Environmental Division